IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNIRAM TECHNOLOGY, INC,

    Plaintiff,

    v

TAIWAN SEMICONDUCTOR
MANUFACTURING COMPANY,

    Defendant.

No  C-04-1268 VRW

ORDER

This is a trade secret misappropriation dispute between plaintiff UniRAM Technology, Inc ("UniRAM") and defendants Taiwan Semiconductor Manufacturing Company LTD and TSMC North America (collectively "TSMC"). UniRAM claims TSMC misappropriated its trade secrets by disclosing them to certain UniRAM competitors. Specifically, UniRAM claims that its process for manufacturing DRAM computer chips embedded in a logic process was a trade secret and that TSMC communicated this secret to companies such as MoSys and MOSAID. TSMC asserts as one of its defenses that MOSAID had been working on a similar product (called HDRAM or ASIC DRAM) before UniRAM and that the allegedly misappropriating HDRAM devices were in fact developed independently of UniRAM.

UniRAM now moves to exclude this defense. TSMC's theory of independent development is premised largely on the testimony of one Peter Gillingham. UniRAM argues that this is significant because Gillingham's status as a witness – as well as documents in his possession which purport to establish independent development – were not disclosed to UniRAM until after the close of fact discovery, in violation of FRCP 26(a) and 26(e). As a result, UniRAM contends it was unable to test the veracity of TSMC's theory and was prejudiced thereby.

For the reasons set forth below, UniRAM's motion is GRANTED in part and DENIED in part. TSMC will still be permitted to defend on the grounds of independent development, but Gillingham's late-disclosed testimony and documents will be disallowed.

I

At the outset of this litigation, UniRAM raised patent claims in addition to its trade secrets claim. To defend against the patent claims, UniRAM consulted with Dr Gillingham, the chief engineer at MOSAID, in May 2006. Doc #387 at 3. This consultation produced a number of documents relating to MOSAID devices, which were turned over to UniRAM in the discovery process. Id at 4, 5.

In March 2007, UniRAM abandoned its patent claims but held on to its trade secrets claims. Then, in "late April or early May 2007," TSMC again consulted with Gillingham and learned that he may have personal knowledge relating to the trade secrets claim, including evidence that MOSAID had been developing HDRAM with TSMC since before UniRAM developed its trade secrets. Id at 5-6. In

2

early May, Gillingham gradually began turning over supporting documents to TSMC, who then disclosed them to UniRAM. Id at 6. On May 30 (after the May 23 deadline for fact discovery), Gillingham located additional documents, which were disclosed to UniRAM on June 6. Id. In addition to those documents, TSMC laid out its theory in its final response to UniRAM's interrogatories on May 24, as permitted by Magistrate Judge James. Lastly, Gillingham filed an "expert report" on the issue of independent development, which was disclosed to UniRAM on June 14. UniRAM claims that June 14 was the first it heard of Gillingham's involvement as a witness in TSMC's theory of independent development. Doc #415 at 3. UniRAM claims it subsequently attempted to depose Gillingham on factual issues, but the parties dispute whether those attempts were obstructed by TSMC's objections to any deposition questions involving Gillingham's personal knowledge of the HDRAM product at MOSAID and TSMC. Compare Doc #387 at 10 with Doc #415 at 12-14.

UniRAM claims that because factual discovery has closed, it cannot submit document or subpoena requests on Gillingham or anyone else with personal knowledge of the HDRAM product. See Doc #415 at 14. Pursuant to FRCP 37(c)(1), UniRAM moves to exclude from the case the above "late-disclosed evidence relating to TSMC's theory that Mr. Gillingham and/or MOSAID independently developed UniRAM's trade secrets." Doc #415 at 2.

II

Rule 26(a)(1) requires each party to disclose "each individual likely to have discoverable information that the

3

disclosing party may use to support its claims or defenses." Rule 26(e) requires parties to supplement their disclosures if they are found to be incomplete. Rule 37(c)(1) prevents any information withheld in violation of Rule 26 from being used at trial. The Rule 37 enforcement provision adopted in 1993 was intended as a "broadening of the sanctioning power," creating an "automatic sanction" and "provid[ing] a strong inducement for disclosure of material." <u>Yeti by Molly, Ltd v Deckers Outdoor Corp</u>, 259 F3d 1101, 1106 (9th Cir 2001). The withholding party may avoid a Rule 37 sanction by showing that the failure to disclose was either harmless or substantially justified. Id.

### III

UniRAM's strongest argument is that TSMC did not disclose Gillingham's role as a fact witness for at least one month after it knew Gillingham would be crucial to its independent development defense. Gillingham became involved in late April to early May. Fact discovery closed on May 23, and Gillingham was not formally disclosed as a witness until June 14 when he submitted his expert report. See Doc #387 at 7.

Gillingham is involved in TSMC's defense as a fact witness, not merely as an expert witness. He purports to testify about which products MOSAID was developing, at which times, and at which levels of involvement with TSMC. Moreover, he has personal knowledge of those facts. TSMC admits Gillingham "was a percipient witness on the issue of TSMC's awareness in 1995 of [HDRAM]" and that he "[h]ad [p]ersonal [k]nowledge [o]f [t]he MOSAID-TSMC

4

[d]evelopment." Doc #387 at 7. All of this information is crucial to the claim of misappropriation and the defense of independent development. Once TSMC knew that Gillingham would be such a key factual witness in its independent development theory and TSMC knew this before discovery closed, it should have disclosed that fact to UniRAM before the close of discovery.

### A

TSMC has shown neither lack of harm nor substantial justification. UniRAM was harmed because it could not impeach Gillingham's factual claims or press him to provide more details. UniRAM could not seek additional testimony or documents to rebut Gillingham's statements. In effect, UniRAM could not contest Gillingham's factual assertions at all, which would severely impair UniRAM's ability to challenge the independent development defense. Although UniRAM knew in 1996 of Gillingham's former role in the case, his involvement was limited to the patent claims rather than the trade secret claims. Once the patent claims were abandoned, there was no reason to believe Gillingham would be relevant to the trade secret claim. Accordingly, UniRAM was entitled to ignore Gillingham during the remainder of discovery. The court is unaware of any published cases supporting this view – though there are several such unpublished cases – but this conclusion is consistent with the letter and spirit of the FRCP discovery rules. If Gillingham were to be involved in litigating the trade secret claim, then under Rule 26(a)(1), TSMC had the burden of calling UniRAM's attention to that fact.

TSMC also cannot show lack of harm from its other Rule 26 violations.  Even if TSMC turned over any relevant documents fairly quickly after Gillingham provided them, UniRAM was still barred from scrutinizing them in the normal course.  The same is true of TSMC's disclosures in the May 24 interrogatory response.

B

TSMC cannot show substantial justification for those violations.  TSMC chose to spring its new information on UniRAM.  TSMC had less drastic alternatives available.  As the Ninth Circuit has described, rarely is a party substantially justified in remaining silent:

> The only justification proffered by the defendants [for withholding their expert rebuttal report] is that they were under the mistaken belief that [plaintiff's expert] report would be supplemented again and were waiting for the final version before disclosing [the rebuttal] report.  Even if true, defendants could have issued a preliminary report to be supplemented after [plaintiff's] report had been modified or they could have asked for an extension of the discovery deadline.

Yeti by Molly, 259 F3d at 1106-07.  Here, TSMC had many options other than doing nothing.  TSMC could have given UniRAM advance notice that it had recently come across new information that would change its defense, or TSMC could have explained the gist of its new theory and the basis for it.  And of course, TSMC could have asked the court for a brief extension of the fact discovery deadline to allow UniRAM a fair opportunity to test TSMC's theory of independent development.  TSMC did none of those things.  Even in the case of the May 24 response, where TSMC had Judge James's permission to wait until May 24, TSMC had no good reason for

1 waiting the extra day past May 23, nor any good reason to not
2 postpone the fact discovery deadline.
3     And TSMC has not even purported to justify its delay in
4 disclosing Gillingham as a "percipient witness," claiming only that
5 it did not act in bad faith.  Doc #387 at 8-9.  Bad faith, however,
6 is irrelevant.  See <u>Yeti by Molly</u>, 259 F3d at 1106 ("[E]ven absent
7 a showing in the record of bad faith or willfulness, exclusion is
8 an appropriate remedy for failing to fulfill the required
9 disclosure requirements of Rule 26(a).").

IV

Overall, TSMC's dilatory disclosures are neither harmless nor substantially justified.  Accordingly, Gillingham will not be permitted to testify at trial about his personal knowledge of MOSAID's dealings with HDRAM and TSMC.  Any statements in his June 14 expert report dealing with his personal factual knowledge will be disallowed.  Claims of independent development advanced in the May 24 response that are based upon Gillingham's personal knowledge will also be disallowed.  UniRAM's motion is DENIED as to all other evidence relating to MOSAID.  Documents disclosed prior to the close of fact discovery may be offered if relevant to TSMC's independent development theory.

IT IS SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge

7